UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT ROSS, ET AL.                          CIVIL ACTION

VERSUS                                       NO: 11-1827

JOHN DIGIOIA, JR., ET AL.                    SECTION: R

## ORDER AND REASONS

Before the Court is plaintiffs' unopposed motion for summary
judgment on its breach of contract claims and request for a
declaratory judgment. For the foregoing reasons, the Court GRANTS
plaintiffs' motion.


**I.    BACKGROUND**

This dispute arises out of a failed real estate construction
and management agreement between plaintiffs, Lisa and Robert Ross
and defendant, John Digioia.  Digioia is plaintiff Lisa Ross's
brother. In early 2009, the Rosses and Digioia began discussing
the possibility of entering into a real estate development and
management agreement.[1] Plaintiffs allege that the parties
discussed the details of the agreements during several visits
that Diogioia made to New Orleans.[2] The parties agreed that

---

[1]     R. Doc. 35-5 at 4.

[2]     R. Doc. 43-6 at 2.

Digioia would select distressed properties in Florida, the Rosses would buy the properties, and then Digioia would repair and manage the properties.[3]  Plaintiffs allege that Digioia persuaded them that buying property in Orlando and allowing Digioia to oversee the renovations would be lucrative.[4]  Plaintiffs compensated Digioia for his services through a ten percent general contractor fee for all property construction[5] and a ten percent management fee.  The parties did not execute a written contract.  Plaintiffs allege that after reaching an oral agreement with Digioia, they spent $760,000 to purchase five properties in Orlando.[6]  Plaintiffs then transferred the properties to five Louisiana limited liability corporations (ABR Investments, ABR Investments-2, ABR Investments-3, ABR Investments-4 and ABR Investments-5) that were formed exclusively for this purpose.[7]

Plaintiffs assert that Digioia grossly mismanaged the renovations of the properties and failed in his management duties

---

[3]  *Id.*

[4]  *Id.*

[5]  Later, this fee increased to eleven percent. *Id.* at 3.

[6]  R. Docs. 35-5 at 5; 43-6 at 2.

[7]  R. Docs. 25-5 at 5-6; 43-6 at 2.

once construction was completed. Plaintiffs state that defendant's derelictions caused them to terminate the contractual relationship. Plaintiffs also argue that defendant has failed to repay loans made by plaintiffs. In 2008, Digioia executed a promissory note in favor of plaintiffs, through which plaintiffs loaned defendant $10,000.[8] The note provided for repayment at a rate of $250 per month commencing on April 15, 2009 and increasing to $500 per month on October 15, 2009.[9] Plaintiffs contend that at the end of the construction period, Digioia had not made payments on the loan and still owed $2,800 of the $10,000, after plaintiffs credited his contracting fees against the promissory note.[10] At that time, plaintiffs wrote Digioia a check for an additional $2,000.[11] Plaintiffs assert that some of Digioia's management fees were deducted from the balance of the loan and that the current outstanding balance is $3,400.[12]

On July 28, 2011, plaintiffs filed a complaint against

---

[8]    R. Doc. 17-3.

[9]    *Id.*

[10]    R. Doc. 43-6 at 3-4.

[11]    *Id.* at 4.

[12]    *Id.*

Digioia,[13] alleging unfair and deceptive trade practices,
negligent misrepresentation, breach of contract, and detrimental
reliance. Plaintiffs filed an amended complaint on May 3, 2012.[14]
In addition to damages, plaintiffs seek a declaratory judgment
that defendant does not have a partnership interest in the
properties at issue and that no additional construction or
contractor fees are owed to defendant.[15] After defendant failed
to comply with a court discovery order requiring him to respond
to plaintiffs' interrogatories, Magistrate Judge Wilkinson issued
an order on July 18, 2012, precluding defendant from introducing
evidence in opposition to motions or at trial on the subjects of
the existence of a partnership agreement, construction delays and
defects, breach of contract, improper property management, and
the terms or payment of the promissory note.[16] Plaintiffs now
move for summary judgment on their declaratory judgment and
breach of contract claims. Plaintiffs also seek the amount owed
on their two loans to defendant. Despite an extension of time to

---

[13]    Plaintiffs also filed suit against Elite Outdoor
Kitchen, LLC, a company owned by defendant. Defendants brought a
motion to dismiss based on improper venue, which the Court
granted with regard to Elite Outdoor Kitchen. *See* R. Doc. 29.

[14]    R. Doc. 40.

[15]    R. Doc. 1.

[16]    R. Doc. 42.

file,[17] defendant has not opposed the motion.


## II.  STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

_____

[17]    R. Doc. 50.

5

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988). Although a nonmovant's failure to respond to a motion for summary judgment does not permit the entry of a "default" summary judgment, the court may

accept the movant's evidence as undisputed. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).


## III. DISCUSSION

### A.    Choice of Law

The Court must first determine the appropriate law to apply. In a diversity action, the Court applies state substantive law and the choice-of-law principles of the forum state. *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1421 (5th Cir. 1993); *Trizec Properties, Inc. v. United States Mineral Products Co.,* 974 F.2d 602, 604 (5th Cir. 1992). Under Louisiana law, an issue in a case is governed by "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Ann. art. 3515.  In making this determination, the Court considers (1) the relationship of each state to the dispute and the parties and (2) the policies of the interstate system, including the policies of upholding parties' expectations and minimizing the adverse consequences of subjecting parties to the law of multiple states. *Id.* Here, plaintiffs have been inconsistent in their identification of the state laws under which their claims fall. Plaintiffs alleged violations of Louisiana law in their original complaint, and they contended

that the application of Louisiana law weighed heavily in favor of
their choice of a Louisiana venue, in opposing defendant's motion
to transfer venue to Florida.  In their amended complaint and
motion for summary judgment, however, plaintiffs cite the laws of
both states.

Because the Court finds that the agreements at the heart of
plaintiffs' claims were negotiated and formed in Louisiana, the
Court applies Louisiana law to this dispute. *See* La. Civ. Code
art. 3537 (place of contract's negotiation, formation, and
performance and location of object of contract are key factors in
determining applicable law). Although the parties' agreement
concerned Florida properties and defendant performed his work in
Florida, the project's financing, the contract negotiations, and
the representations made by each party in forming the agreement,
which are central to the disputed issues, all occurred in
Louisiana. Moreover, the promissory note which plaintiffs seek to
enforce provides that it is governed by Louisiana law. The Court
therefore finds that Louisiana has more significant contacts with
the parties than Florida and greater interest in the resolution
of the dispute. *See, e.g., Petticrew v. ABB Lummus Global, Inc.*,
53 F. Supp. 2d 864, 866-67 (E.D. La. 1999) (Texas's contacts with
the parties were more significant than Louisiana's because the
negotiation and execution of the contract occurred in Texas). The

8

Court also finds that no showing has been made that Florida law differs from Louisiana law on any material issues raised here. *See, e.g., Nelson Radiology Associates, L.L.C. v. Integrity Med. Sys., Inc.,* 16 So. 3d 1197, 1203 (La. App. Ct. 2009)(finding it inconsequential whether Florida or Louisiana law applied to contract dispute since there were adequate protections for parties under either state's laws).

**B. Breach of Contract**

*1. Construction Defects*

Plaintiffs seek summary judgment on their claims that defendant breached his duty of good workmanship in renovating the five properties. Plaintiffs assert that the parties agreed orally that defendant would repair the Florida properties purchased by plaintiffs and that, due to his substandard work, defendant breached his obligation and produced extensive construction delays and defects. Under Louisiana law, if an individual does not complete the work he has contracted to do or fails to execute it in the manner agreed upon, he is liable for the losses that ensue from his non-compliance. La. Civ. Code Ann. art 2769. "It is implicit in every construction contract that the work of the builder be performed in a good, workmanlike manner, free from defects in materials or workmanship." *Melancon v. Tri-Dyne Tele-Pier, LLC*, 95 So.3d 576, 581 (La. App. Ct. 2012); *see also*

*Matherne v. Barnum*, 94 So. 3d 782, 789 (La. App. Ct. 2012).

Before the Court can consider whether defendant breached the terms of his agreement with plaintiffs, the Court must first find that a contract existed. An oral contract with a value of more than $500 must be proven by at least one witness and other corroborating evidence. La. Civ. Code art. 1846. "The plaintiff himself may serve as the witness to establish the existence of the oral contract . . . . But, the other corroboration must come from a source other than the plaintiff." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 58 (La. 2005) (internal citations omitted). The corroborating evidence "need only be general in nature." *Id.* Here, plaintiffs submit an affidavit from Dr. Ross, attesting to the agreement he and his wife formed with defendant.[18] Further, plaintiffs' purchase of the properties and defendant's work on those homes support Dr. Ross's description of the terms of the contract. The Court thus finds that plaintiffs have sufficiently demonstrated that they formed an oral agreement with defendant concerning the five Florida properties.

To recover damages for defendant's breach of this contract through his faulty repair of plaintiffs' properties, plaintiffs

---

[18]    R. Doc. 43-6.

must show "the existence and nature of the defects; 2) that the defects were due to faulty materials and workmanship; and 3) the cost of repairing the defects." *Melancon*, 95 So.3d at 581. As evidence of defendant's defective workmanship and the resulting defects and costs incurred to repair the damage, plaintiffs submit an affidavit, invoices, and photos from Cyril Campbell, who performed repairs on the five properties owned by plaintiffs.

Campbell noted that the Galen Avenue property had the following problems, which he either addressed or planned to address: bathroom leaks, peeling floors, ruined drywall, improperly constructed screen room, improperly installed garage doors, and a damaged front door.[19] Regarding the Mulbry Drive property, Campbell stated that the kitchen and bathroom leaked, the bathtub was improperly installed, and the bathroom tile needed to be removed, all of which he completed, other than the re-piping work for which a plumber was hired.[20] According to his affidavit, Campbell repaired rotten siding at the East Winter Park Road property and noted that the repair and painting of the

---

[19]     R. Doc. 43-7 at 2-3.

[20]     *Id.* at 2, 5-6.

ceiling sheetrock remained.[21] For the Cole Road property,
Campbell stated that the following problems needed to be
addressed: faulty tiling, exposed ceiling, leaking garbage
disposal, malfunctioning electrical wiring, unsecured sink,
defective shower pan, uncaulked and unpainted wood trim and
doors, and an improperly poured concrete step.[22] Last, Campbell's
affidavit indicated that at the Chelsea Street property, he
needed to reinstall the house gates, replace plumbing fittings,
repair roof leaks, and reinstall closet doors.[23] Campbell
identified as outstanding work the repair of the deck,
replacement of wood panels, and the rebuilding of a shower
valve.[24]

Defendant did not oppose the motion for summary judgment or
argue that plaintiffs' evidence is insufficient to establish
defendant's defective workmanship. *See, e.g., Eversley*, 843 F.2d
at 174 (court may accept movant's evidence as undisputed if
nonmovant fails to respond to summary judgment). Further, the
Magistrate Judge's order barred defendant from introducing

---

[21]    *Id*. at 7-8.

[22]    R. Doc. 43-7 at 9-10.

[23]    *Id*. at 11-12.

[24]    *Id.*

12

evidence concerning construction delays and defects.[25] Based on plaintiffs' undisputed evidence of the defects allegedly caused by defendant and the work required to repair them, the Court finds that defendant breached his oral contract with plaintiffs to perform construction and repair work on the five properties.

A plaintiff whose claim for breach of contract to build succeeds is entitled to recover the cost of repairing the defects or completing the work so that he is placed in the position that he should have occupied at the completion of building. *See Martinez v. Reno*, 742 So. 2d 1014, 1016 (La. App. Ct. 1999); La. Civ. Code Ann. art 2769. Because defendant may not offer evidence of the extent of the work required on the houses or the accompanying costs, the Court accepts as undisputed plaintiffs' evidence of the repairs necessary to restore the properties to the state envisioned by the parties' agreement. The Court therefore finds that plaintiffs are entitled to recover the costs of the completed and outstanding repairs identified by its contractor in his affidavit.[26]

---

[25]    R. Doc. 42.

[26]    Although Campbell's affidavit indicates that a plumber was hired to perform work on the Mulbry house, *see* R. Doc. 43-7 at 2, because the Court cannot determine the cost of this expense or whether it was included as part of Campbell's estimates, the Court shall look only at the work performed by Campbell.

Given how closely Campbell's overall estimates in his affidavit of the costs of completed work correspond to tallies of the individual repairs listed in the invoices, the Court accepts Campbell's calculations of the necessary repairs for four of the houses. The Court finds, however, that Campbell's estimate of the total repairs made on the Mulbry property are not supported by the invoices. Campbell estimated that at the time he prepared his affidavit, the cost of completed work totaled $15,000. But, this figure appears to incorporate both an estimate for extensive bathroom work and the actual cost of this work.[27] Based on the types of repairs identified by Campbell in his affidavit, the Court finds that the invoices produced by plaintiffs support a total of $10,675.16 in repairs for the Mulbry property.[28]

Accordingly, plaintiffs have put forth evidence that they incurred or will incur the following costs as a result of defendant's breach of contract: 1) Galen Avenue: $11,804 ($4104 in completed work, $7700 in remaining work),[29] 2) Mulbry Drive:

---

[27] *Compare* R. Doc. 43-7 at 22 *and* 23.

[28] R. Docs. 43-7 at 23 (invoice for $7110), 26 (invoice for $3065.16); 43-8 at 6 (permit for repiping, $500).

[29] R. Doc. 43-7 at 2-3, 14-20.

$10,675.16 in completed work,[30] 3) East Winter Park Road: $13,765 ($13,365 in completed work, $400 in remaining work),[31] 4) Cole Road: $11,073 ($1873 in completed work, $9200 in remaining work),[32] and 5) Chelsea Street: $5464 ($507 in completed work, $4957 in remaining work).[33] The Court finds that no questions of material fact exist as to defendant's obligation to pay to plaintiffs the sum of $52,781.16, which represents the cost of repairing damage produced by defendant to the five properties owned by plaintiffs.

### 2. Improper Accounting Claims

Plaintiffs also seek summary judgment on their claims for improper construction accounting. Plaintiffs allege that they supplied defendant with a credit card and signing power on their checking account to assist in his renovation of the Florida properties. Plaintiffs contend that defendant mismanaged the

---

[30]    *Id.* at 5-8.

[31]    R. Doc. 43-7 at 7-8. The Winter Park invoice regarding repair work done to the roof indicates that an extensive remodeling was undertaken. *See* R. Doc. 43-8 at 11-13. But, because defendant may not present evidence that such work was not necessary to place plaintiffs in the position they would have occupied had defendant's work not been faulty, the Court accepts plaintiffs' allegations that the repairs were required.

[32]    R. Docs. 43-7 at 9-10; 43-9 at 7-12.

[33]    R. Docs. 43-7 at 11-12; 43-9 at 14.

construction accounting, failed to document expenses and account for costs, and charged personal expenses to the credit card. As evidence, plaintiffs cite the affidavit of Dr. Ross, attesting to defendant's improper accounting and lack of documentation,[34] together with a document listing credit card charges for which defendant produced no receipts.[35]

Louisiana law provides for the enforcement of a mandate, which is "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. Civ. Code Ann. art. 2989. The existence of a mandate must be established by the testimony of one credible witness and other corroborating circumstances. *Savoie v. Rogers' Estate*, 410 So.2d 683, 688 (La. 1982); La. Civ. Code Ann. art. 2993; 1846. "At the request of the principal, or when the circumstances so require, the mandatary is bound to provide information and render an account of his performance of the mandate." La. Civ. Code Ann. art. 3003.

The Court finds that plaintiffs have put forth evidence that defendant acted as their mandatary. In his affidavit, Dr. Ross stated that he and his wife provided defendant with a credit card

---

[34]    R. Doc. 43-6 at 4-5.

[35]    R. Doc. 43-6 at 11-12.

and access to their account to use in renovating the five properties on their behalf.[36] Defendant confirmed this arrangement in his answer to plaintiffs' complaint.[37] Moreover, the Court finds that plaintiffs have demonstrated that defendant failed to provide receipts for expenses when asked, as is required of a mandatary. Plaintiffs have put forth evidence that the undocumented charges made by defendant total $6,830.[38] In an action against a mandatary, once the principal shows that the mandatary received a certain amount of money, the mandatary bears the burden of establishing the way in which he disposed of the funds. *Savoie*, 410 So. 2d at 688. Because defendant has not made such a showing, the Court finds that defendant owes plaintiffs $6,830 for his failure to account for funds that he used while acting as plaintiffs' mandatary.

**C.   Declaratory Judgment**

*1.   Existence of a Partnership*

Plaintiffs seeks a declaratory judgment that no partnership agreement exists between plaintiffs and defendant, that plaintiffs do not owe defendant any amount of money, and that

---

[36]    R. Doc. 43-6 at 4.

[37]    R. Doc. 15 at 7.

[38]    R. Doc. 43-6 at 5, 11-12.

17

defendant in fact owes plaintiffs $3,400. "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000). First, the court must determine whether the declaratory action is justiciable in that an "actual controversy" exists between the parties to the action. *Id.* Second, if the court has jurisdiction, it must determine whether it has the "authority" to grant declaratory relief. *Id.* Finally, the court must determine whether to exercise its discretion to decide or dismiss the declaratory action. *Id.*

Here, all three steps have been satisfied. A declaratory judgment action is ripe for adjudication only when an 'actual controversy' exists." *Id.* at 896. Generally, "an actual controversy exists when 'a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests.'" *Id.* (quoting *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir. 1986)). Whether the facts are sufficiently immediate to establish an actual controversy is a case-by-case inquiry. *Id.* Here, defendant stated in his answer that he formed a partnership agreement with plaintiffs, which bears directly on the relationship between the parties and the money that they owe. Further, in deciding whether

to exercise its discretion to grant a declaratory judgment, the Court must balance the following factors: 1) whether there is a pending state action; 2) whether plaintiffs filed suit in anticipation of a suit by defendant; 3) whether the plaintiff engaged in forum shopping in bringing the claim; 4) whether any inequalities will ensue by allowing the declaratory plaintiff to gain precedence in time or to change forums; 5) whether the federal court is a convenient forum; and 6) whether retaining the suit would further judicial economy. *St. Paul Insurance Company v. Trejo,* 39 F.3d 585, 590-91 (5th Cir. 1994). Because the Court determines that plaintiffs' request for a declaratory judgment is closely linked to its other claims and no state court suit has been filed, the Court finds that consideration of the claim will further judicial economy and does not implicate any of the other concerns often posed by an action for declaratory judgment.

In his answer to plaintiffs' original complaint, defendant asserted that he entered into a partnership with plaintiffs to purchase, renovate, and rent the properties.[39] He contends that he is thereby entitled to a partnership interest of ten percent of the monthly rental payments on the five houses or ten percent of the total value of the partnership or reimbursement of his

---

[39]    R. Doc. 15.

partnership contribution, which he estimates to be forty percent of the original cost of construction and renovation.[40] Despite these assertions, pursuant to the order issued by Magistrate Judge Wilkinson in response to defendant's failure to comply with a discovery order, defendant may not introduce evidence on the subject of whether a partnership agreement exists.[41]

Conversely, Dr. Ross submits an affidavit stating that plaintiffs never intended to form a partnership with defendant or include him in their losses or profits and that they did not involve him in the formation of the ABR Group entities, the limited liability companies to which the Rosses transferred the properties.[42] Dr. Ross asserts that defendant contributed no money to the purchase of the properties and was hired as an independent contractor to renovate and manage the properties.[43] Under Louisiana law, the existence of a partnership requires: "(1) a sharing in the profits and losses of a business enterprise; (2) mutual consent to form a partnership; and (3) the property of, or stock in, the enterprise must form a community of

---

[40]    *Id.* at 9.

[41]    R. Doc. 42.

[42]    R. Doc. 43-6.

[43]    *Id.* at 2-3.

goods in which each party has a proprietary interest." *Franklin Printing Co., Inc. v. Scott Fence of New Orleans, Inc.,* 392 So. 2d 170, 172 (La. Ct. App. 1980), *writ denied,* 397 So. 2d 805 (La. 1981); La. Civ. Code Ann. art. 2801. Given Dr. Ross's statement that the Rosses did not share profits and losses with defendant and that no mutual consent to form a partnership existed, as well as the absence of evidence submitted in support of defendant's position, the Court finds that no partnership agreement was formed between plaintiffs and defendant. Thus, plaintiffs do not owe defendant any funds related to his alleged status as a partner.

　　2.　*Outstanding Debts*

Plaintiffs also seek a declaratory judgment that they do not owe defendant any money, because although defendant was entitled to contracting and managing fees, plaintiffs offset those fees against the amount defendant owed to plaintiffs on the $10,000 promissory note that the parties signed. In addition, plaintiffs assert that defendant owes them $3,400 based on his failure to repay the promissory note and the subsequent loan of $2000. In order to determine whether plaintiffs have put forth uncontroverted evidence that a declaratory judgment on the subject of their payments to defendant is warranted, the Court

must consider the terms of the promissory note.

The note, executed between plaintiffs Lisa and Robert Ross and defendant on October 15, 2008, stated that defendant as the borrower promised to pay to the Rosses $10,000.[44] The note stated that the amount would be repaid in monthly installments of $250, starting on April 1, 2009 and that the monthly payments would increase to $500 on October 15, 2009.[45] Defendant acknowledged his obligation under the promissory note in his answer to plaintiffs' complaint.[46] Further, Dr. Ross states in his affidavit that defendant made no cash payments on the note, and pursuant to the magistrate order, defendant may not put forth evidence as to the amount owed under the promissory note. "Once the maker of a promissory note admits signing the note and the note is produced, the holder of the note is entitled to recover in the absence of any further evidence." *Estate of Pittman v. Pittman*, 69 So. 3d 1254, 1257 (La. App. Ct. 2011); *see also U.S. v. Laurent*, No. 08-1566, 2009 WL 511250, at *1 (E.D. La. Feb. 27, 2009) (granting summary judgment since debtor failed to establish "nonexistence, extinguishment, or variance in payment of the

---

[44]    R. Doc. 17-3.

[45]    R. Doc. 17-3.

[46]    R. Doc. 15 at 3.

obligation"). Accepting plaintiffs' evidence as undisputed, the Court therefore finds that defendant failed to abide by the terms of the promissory note and plaintiffs are owed the outstanding amount.

Yet, plaintiffs do not seek a declaratory judgment that defendant owes $10,000 in repayment of the promissory note. Rather, plaintiffs claim that defendant failed to pay an additional loan of $2000, which they made to defendant in September 2010. As evidence, plaintiffs refer to Dr. Ross's affidavit in which he describes the $2000 loan and an email with payment details of the electronic check sent to defendant.[47] In his affidavit, Dr. Ross also indicates that defendant did not make any cash payments on the second loan.[48] Thus, plaintiffs have produced evidence that they lent defendant a total of $12,000 and received no cash payments on the loans.

Plaintiffs then seek to credit fees that they owe to defendant for his contracting and property management work against the amount he owes plaintiffs on the two loans.[49] Plaintiffs have put forth evidence that they owe defendant $8,600

---

[47]    R. Doc. 43-6 at 4, 9.

[48]    *Id.* at 4.

[49]    *Id.*

in fees and that offsetting these fees against the amount that defendant owes on the two loans produces a balance of $3,400 in unpaid loans, which defendant owes to plaintiffs.[50] In light of defendant's inability to put forth evidence and failure to oppose the motion for summary judgment, the Court accepts as undisputed plaintiffs' evidence concerning the amount both parties owe.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion for summary judgment to recover $52,781.16 on their breach of contract claim related to construction defects, as well as plaintiffs' motion to recover $6,830 on their improper accounting claim. The Court also GRANTS plaintiffs a declaratory judgment that no partnership existed between plaintiffs and defendant, that plaintiffs owe defendant no additional fees, and that defendant owes plaintiffs $3,400 in unpaid loans.


New Orleans, Louisiana, this 20th day of November, 2012.


_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[50]    _Id._